(C. D. 1761)

Copex America, Inc. *v.* United States

## United States Customs Court, Third Division

(Decided February 9, 1956)

*John D. Rode (Ellsworth F. Qualey* of counsel) for the plaintiff.
*Warren E. Burger,* Assistant Attorney General (*Dorothy C. Bennett,* trial attorney), for the defendant.

Before EKWALL, JOHNSON, and DONLON, Judges

DONLON, Judge: By stipulation, dated October 20, 1955, counsel withdrew the previous submission of this case and resubmitted the protest to the third division as now constituted.

Plaintiff's protest presented alternative claims, but, at the trial and in its brief, plaintiff relied on the claim that this merchandise, cauliflower florets or clusters, quick-frozen and imported in boxes weighing 3½ pounds, should be classified as a vegetable in the natural state under paragraph 774 of the Tariff Act of 1930, with the rate reduced to 12½ per centum ad valorem, as provided in the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, effective June 6, 1951. The collector classified the merchandise as a vegetable, reduced in size, dutiable at 35 per centum ad valorem under paragraph 775 of the 1930 act.

Paragraphs 774 and 775 of the Tariff Act of 1930, insofar as pertinent, read as follows:

Paragraph 774 [as modified by the Torquay protocol]:

Vegetables in their natural state:

\*      \*      \*      \*      \*      \*      \*

Cauliflower, when entered during the period from August 6 to October 15, inclusive, in any year_____ 12½% ad val.

Paragraph 775:

Vegetables (including horseradish), if cut, sliced, or otherwise reduced in size \* \* \* or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for; \* \* \* 35 per centum ad valorem.

If this merchandise is properly dutiable under paragraph 774, as plaintiff claims, it appears that the importation fell within the time period provided in the Torquay protocol for rate reduction.

The record developed by testimony in behalf of both parties leaves no room for dispute as to the essential facts. Cauliflower, as grown on the farm, has a cluster-like flower head that is surrounded by leaves. This flower head is supported by a tough stalk at the flower base. The base and some, at least, of the leaves remain with the flower head when fresh cauliflower is marketed. The leaves serve a twofold purpose. They protect the flower head and also furnish nourishment to it during the period of marketing. · Indeed, the United States

Department of Agriculture requires that protecting leaves remain on fresh cauliflower that is to be marketed.

The process of preparing quick-frozen cauliflower (clusters), similar to the instant merchandise, is substantially the same whether processed abroad or in this country. When received in the processing plant, the leaves are stripped back from the cauliflower head, and a knife cut at the base removes the tough stalk and the leaves. After trimming, the flower head is then broken or cut in half. The heavy core, binding together the flower head, may also be further trimmed. Cauliflower is sold to the freezer on a weight basis, and it is desirable to trim as much waste as possible. The leaves, tough stalk, and such of the hard core as is cut away have no commercial food value.

Each half of the flower head is then further broken or cut into the component flower clusters. Defendant's witness, Mr. Irwin Fried, of the United States Department of Agriculture, testified that these clusters are washed, blanched, and cooled, and that a weak citric-acid spray is applied to prevent discoloration. The clusters are then passed over an inspection table so that discolored, defective, or insect-damaged pieces may be removed. A shaker belt removes small pieces from the larger clusters.

In making up the packages for freezing, clusters from a single head do not necessarily go into a single package. There is variation in the size of clusters from a single head, and clusters are selected to make up the weight of the package, which is 3½ pounds. One package may include clusters from several flower heads. Freezing keeps the clusters in their natural state. As purchased, quick-frozen cauliflower is ready for cooking, without further preparation.

Plaintiff, in its brief, cites decisions interpreting the words "prepared or preserved" in paragraph 775, with respect to freezing. The defendant rightly defines the issue as calling for decision whether or not this merchandise was "cut, sliced, or otherwise reduced in size," rather than whether or not it was "preserved" by freezing. The latter is not the basis of the collector's classification.

It may be well to recall here the circumstances under which the Congress first enacted the language we are now called upon to construe. Early tariff acts had no such language with respect to vegetables as "cut, sliced, or otherwise reduced in size." This language was new in the Tariff Act of 1909, and it was reenacted in the Tariff Acts of 1922 and 1930. In the notes on the Tariff Act of 1897, prepared in 1908 for use of the Committee on Ways and Means of the House of Representatives, there was considerable discussion of conflicting decisions that interpreted tariff provisions applicable to vegetables, quoted extensively in defendant's brief. After observing that "the varying rulings are the cause of many incongruities and inconsistencies," the reporter for the House Committee suggested

that "the provisions for vegetables not specially provided for be made the subject of a separate paragraph, with precise terms of the delimitation of the various clauses."

This was done. The Congress adopted the recommendation, and, in all respects pertinent to this decision, the language of paragraph 252 of the Tariff Act of 1909, of paragraph 200 of the Tariff Act of 1913, of paragraph 773 of the Tariff Act of 1922, and of paragraph 775 of the Tariff Act of 1930, are alike. For the first time, in the 1909 act, there were "precise terms" of classification for vegetables "cut, sliced, or otherwise reduced in size * * * ," the language in the Tariff Act of 1930, on which the collector's classification is based.

The meaning of the words "cut, sliced, or otherwise reduced in size," was considered by our appellate court in *United States* v. *The Hothouse Products Corp., Quinn & Werner*, 21 C. C. P. A. (Customs) 261 (1933), T. D. 46789. There, the imported merchandise was endives. From each plant a substantial number of outer leaves had been removed. The endives were classified by the collector as a vegetable in the natural state, under paragraph 774. Claim was made by the importer that the endives were a vegetable, reduced in size, by removal of the outer leaves, to be classified under paragraph 775. The record before the court showed that the imported endive, with outer leaves removed, was in the same condition as endive that is marketed in this country as a fresh vegetable. Holding the endive to be properly classified by the collector as a vegetable in the natural state, the court stated at pages 263–264:

* * * It is our opinion that when Congress used the words "reduced in size," it contemplated, with reference to vegetables of this character, a reduction in size beyond the point that such vegetables are ordinarily reduced in size as an incident of placing them in a marketable condition. In other words, if endives, as grown in this country and abroad, are not usually sold or dealt in without removing a part of the leaves, then with such leaves removed they are in their natural state and not reduced in size in a tariff sense.

The testimony in the instant case establishes, and indeed plaintiff concedes, that fresh cauliflower marketed in this country is sold with the core, tough stalk, and at least some of the outer leaves substantially untouched, the leaves furnishing nourishment and protection to the flower head during the period of marketing. The record shows also that quick-frozen cauliflower (clusters) are the final product of a processing operation in which the head is cut away from the stalk, the leaves are removed, the core is removed or trimmed, the flower head itself is cut or broken in two, and the halves are further broken or cut into individual clusters. No package containing frozen clusters can accurately be said to represent a fresh cauliflower, either as it grows or as it is usually marketed in this country. It is not a vegetable in the natural state for tariff purposes.

Plaintiff suggests that what the Congress contemplated in the words "cut, * * * or otherwise reduced in size," is the cutting or other reduction of the edible portion of the vegetable. It is not necessary now to decide that issue as to congressional intent, because it is a fact that the instant merchandise represents pieces or clusters cut or broken off the edible portion of cauliflower.

For the reasons here stated, we hold that quick-frozen cauliflower (clusters) are vegetables, reduced in size, properly classified under paragraph 775 of the Tariff Act of 1930. The protest is overruled. Judgment will be rendered for defendant.